COMMONWEALTH *vs.* NEW ENGLAND COLLEGE OF CHIROPRACTIC.

Suffolk.   March 15, 1915. — May 20, 1915.

Present: RUGG, C. J., LORING, BRALEY, PIERCE, & CARROLL, JJ.

*Granting Degree without Authority. Chiropractic. Words,* "Doctor," "Degree."

The giving without legislative authority by an incorporated "college of chiropractic" of a certificate naming the holder as a "Doctor of Chiropractic" is punishable under R. L. c. 208, § 75, as granting a degree "without the authority of a special act of the General Court granting the power to give degrees."

COMPLAINT, received and sworn to in the Municipal Court of the City of Boston on August 14, 1914, charging that the defendant, a corporation called the New England College of Chiropractic, on June 4, 1914, at Boston granted to one Alfred H. Flower a degree as a Doctor of Chiropractic, without the authority of a special act of the General Court granting the power to give degrees, in violation of R. L. c. 208, § 75.

On appeal to the Superior Court a motion to quash the complaint was denied, and the defendant was tried before *Aiken,* C. J. The evidence is described in the opinion. At the close of the evidence the defendant asked the Chief Justice to make the following rulings:

"1. To affix to a name the letters 'D.C.,' which stand for a

'Doctor of Chiropractic,' under the first half of R. L. c. 208, § 75, is not an offence, because the letters 'D.C.' do not represent any degree authorized by law, that is, issued by any institution of learning authorized by an act of the Massachusetts Legislature to issue degrees.

"2. To give a certificate, naming the holder as a 'Doctor of Chiropractic' or 'D.C.,' is not to confer a degree, because neither the name 'Doctor of Chiropractic' nor the letters 'D. C.' stand for any degree conferred by any institution of learning authorized to issue degrees by any act of the Massachusetts Legislature.

"3. It is against all the rules for the construction of legislative enactments, especially penal statutes, that the same word shall have two meanings in the same sentence. In the first half of section 75, the word 'degree' means degrees authorized by law. In the latter portion of the same sentence the word 'degree' as interpreted by the complaint against the defendant, must mean a degree not authorized by law. In other words, if the defendant should grant the degree 'M.D.' it would clearly be an indictable offence under section 75 because it granted an authorized degree without being legally authorized so to do. Therefore it cannot be indicted for granting the title 'D.C.' because in so doing it confers a title not recognized by law as a degree, unless the court shall give to the same word two meanings in the same sentence. That is to say, that in the first half of section 75 the word 'degree' means degree authorized by law. In the second half it must mean, in order to hold the defendant, unauthorized by law."

The Chief Justice refused to make any of these rulings, and submitted the case to the jury, who returned a verdict of guilty. The defendant alleged exceptions.

The whole of R. L. c. 208, § 75, of which a part is quoted in the opinion, is as follows:

"Whoever, in a book, pamphlet, circular, advertisement or advertising sign, or by a pretended written certificate or diploma, or otherwise in writing, knowingly and falsely pretends to have been an officer or teacher, or to be a graduate or to hold any degree of a college or other educational institution of this Commonwealth or elsewhere, which is authorized to grant degrees, or of a public school of this Commonwealth, and whoever, without the authority of a special act of the General Court granting the power

to give degrees, offers or grants degrees as a school, college or as a private individual, alone or associated with others, shall be punished by a fine of not more than one thousand dollars or by imprisonment for not more than one year, or by both such fine and imprisonment."

*R. S. Hoar*, for the defendant.

*A. C. Webber*, Assistant District Attorney, for the Commonwealth.

Rugg, C. J.  This is a complaint wherein the defendant corporation is charged with granting the degree of Doctor of Chiropractic without authority and contrary to the statute.

There was at the trial no controversy touching the fact that the defendant issued a certificate in which it was stated amongst other matters that "Alfred H. Flower, M.D., having satisfactorily completed the prescribed Courses of Study in the New England College of Chiropractic, passed the examinations and met all other requirements for graduation, has been declared a Doctor of Chiropractic." This certificate was signed by seven persons, all of whom wrote after their names the letters "D.C.," five also adding letters indicative of well recognized degrees such as B.S., M.D., D.D.S.

Flower, called as a witness by the Commonwealth, after stating that the degree of Doctor of Medicine had been conferred upon him by another institution, to the question "Have you a degree of Doctor of Chiropractic?" replied, "Yes; that is what it claims, I believe." He further testified that the New England College of Chiropractic conferred that degree on him and that at the same time the degree was conferred upon perhaps a dozen other persons; and that the ceremony was similar to any college or high school graduation upon a commencement day. Officers and members of the faculty of the defendant testified in substance that the letters "D.C." stood for Doctor of Chiropractic, but that it was not a degree. It is not contended that the defendant was authorized by any special or general act of the Legislature to confer degrees. It requires no discussion to demonstrate that the evidence of the witness Flower, if believed, warranted a finding by the jury that Doctor of Chiropractic was treated as a degree.

The provision of R. L. c. 208, § 75, material to the present prosecution is, ". . . Whoever, without the authority of a spe-

cial act of the General Court granting the power to give degrees, offers or grants degrees as a school, college or as a private individual, . . . shall be punished. . . ." Its obvious purpose is to suppress the kind of deceit which arises from the pretence of power to grant academic degrees, and to protect the public from the evils likely to flow from that variety of misrepresentation and imposition. The earlier part of the section deals with the simulated possession of educational distinctions, including college degrees. The section as a whole is an effort to punish the issuing and holding of sham degrees from colleges and other educational institutions. It aims to ensure to the people of the Commonwealth freedom from deception, when dealing with those who put forward professions of educational achievement such as ordinarily is accompanied by a collegiate degree from an institution authorized to grant it and to make certain that those who use such symbols have had the opportunity of being trained according to prevailing standards in some school of recognized standing, under teachers of reputation for learning. *Wright* v. *Lanckton,* 19 Pick. 288, 291.

The statute should be interpreted in the light of its design to effectuate its purpose so far as the words used reasonably construed permit of this result. Considered historically and according to present practice, there are three general grades of such degrees, namely, — Bachelor, Master and Doctor; although by some institutions intermediate distinctions are granted. In common speech as well as in university parlance, "Doctor" as a prefix to a person's name signifies an academic distinction founded upon having received a degree. The same is true when other initials in combination with D. are written after the name, as D.D., LL.D., Ph.D., M.D. It is not to be assumed that the statute was intended to relate only to such degrees as were in use at the time it was enacted. It is comprehensive in its terms and includes whatever properly may be described as a degree at any time. It is possible that institutions authorized to grant degrees may establish and grant the degree here in question. "Doctor" is used commonly to indicate skill in the general subject of medicine. Doubtless one purpose of the Legislature in enacting the statute was to protect the public from the imposition and suffering which might follow the indiscriminate use of a title conveying the implication of skill to treat disease by those who have pursued no adequate course

of study to qualify them. "Chiropractic" is a new word. But it has been held in *Commonwealth* v. *Zimmerman, ante*, 184, that one practicing it may be found to be practicing medicine. "Degree," as used in this statute, is any academic rank recognized by colleges and universities having a reputable character as institutions of learning, or any form of expression composed in whole or in part of words recognized as indicative of academic rank, alone or in combination with other words, so that there is conveyed to the ordinary mind the idea of some collegiate, university or scholastic distinction. While this definition may not include all instances, it is sufficiently accurate for the present case. The ordinary diploma of public or private schools, simply certifying to the completion of a course of study, does not contravene the statute. But when a title like "Doctor," commonly associated with unusual skill acquired by academic or professional study in schools or colleges, is conferred either separately or associated with other words, the statute is violated. The conferring of a title made up of the word "Doctor" and a word relating to the healing art may be found to be the granting of a degree within the meaning of the statute. The word "Doctor" in connection with an unusual and high sounding word would be quite as likely to impose upon the ignorant and credulous as the false use of the conventional Doctor of Medicine.

As thus construed, the word "degree" is used with a consistent meaning throughout the section and effectuates the design of the statute to protect the public against imposition. It follows that the three requests for instructions presented by the defendant rightly were denied.

*Exceptions overruled.*