32 N.J. Super. 502 (1954)
108 A.2d 632
ALBERT WESTON AND LIONEL WESTON, APPELLANTS,
v.
NEW JERSEY STATE BOARD OF OPTOMETRISTS, RESPONDENT. IN THE MATTER OF THE SUSPENSION OR REVOCATION OF THE LICENSES OF ALBERT WESTON AND LIONEL WESTON TO PRACTICE OPTOMETRY IN THE STATE OF NEW JERSEY.
Superior Court of New Jersey, Appellate Division.
Argued October 25, 1954.
Decided October 28, 1954.
*505 Before Judges EASTWOOD, GOLDMANN and SCHETTINO.
Mr. Morton Stavis argued the cause for appellants (Messrs. Gross & Blumberg, attorneys; Mr. Leo Blumberg and Mr. Morton Stavis, of counsel).
Mr. William K. Miller, Deputy Attorney-General, argued the cause for respondent (Mr. Grover C. Richman, Jr., Attorney-General, attorney).
The opinion of the court was delivered by GOLDMANN, J.A.D.
These are appeals from resolutions of the New Jersey State Board of Optometrists suspending for 60 days the licenses of Albert Weston and Lionel Weston to practice optometry.
Proceedings against the Westons were instituted by identical complaints filed by Dr. John J. Brown, inspector for the board, charging them with violating various provisions of the Optometry Act (N.J.S.A. 45:12-1 et seq.) and the rules governing the practice of optometry which were promulgated by the board pursuant to the act, viz.:
1. Displaying in their reception room ophthalimc fitting tables and ophthalmic fitting mirrors which are used in fitting frames and lenses to patients with optical tools and instruments, where the display of such tables and mirrors, frames, lenses, optical tools and instruments made them visible from the street, in violation of N.J.S.A. 45:12-11(j).
2. Continuing in the employ of Towne Company, a corporation, after they had knowledge that the company was violating the laws of the State of New Jersey respecting optometry, in violation of N.J.S.A. 45:12-11(n).
3. Deceitfully using the name "Towne Company" in such manner as to convey to the public the impression that Towne Company was conducting an optometric office and was responsible for the professional optometric service being offered, in violation of N.J.S.A. 45:12-11(o).
4. Displaying their names together with signs containing the words "Towne Company, Opticians," in violation of N.J.S.A. 45:12-11(q).
*506 5. Practicing optometry under the name "Towne Company," in violation of Rule 1 of the Board.
6. Displaying the words "Towne Company, Opticians," in violation of Rule 1 of the Board.
7. Permitting the use of their names in conjunction with a corporation, Towne Company, in violation of Rule 5 of the Board.
8. Dividing and sharing fees with the Towne Company, in violation of Rule 10 of the Board.
9. Practicing optometry under the name of Towne Company, in violation of Rule 13 of the Board.
In due course the Westons answered interrogatories propounded by the board, and a hearing on the charges followed. At the close of the entire case counsel for the Westons moved to dismiss the complaints. The board reserved decision. By stipulation the record made in the case of Dr. Albert Weston was to be used by the board in the case of Dr. Lionel Weston. Thereafter the board filed a "decision, determination and judgment" in each of the cases, unanimously denying the motion to dismiss, finding the Westons guilty of having violated the provisions of the Optometry Act and the board rules in question, and suspending their licenses to practice optometry for a period of 60 days.
In each case the so-called "decision, determination and judgment" of the board consists of a lengthy resolution which summarizes in detail the charges made and the testimony and exhibits adduced at the hearing. Immediately following the summary of the testimony each resolution abruptly concludes with the unanimous determination of the board finding the Westons guilty and imposing the suspension of license.

I
The board completely failed to make written findings of fact, as required by R.S. 45:12-13, and as would generally be required of any administrative tribunal sitting in a quasi-judicial capacity. The necessity of making adequate findings of fact was pointed out to this very board in New Jersey State Board of Optometrists v. Nemitz, 21 N.J. *507 Super. 18, 32 (App. Div. 1952), where this court declared that "The legislative mandate for the reduction of findings to writing is a matter of substance and, if not complied with, renders the proceeding fatally defective." And see New Jersey Bell Telephone Co. v. Communications Workers, etc., 5 N.J. 354, 374-377 (1950), where the cases and the reasons supporting the need for findings are discussed at length; and Saginaw Broadcasting Co. v. Federal Communications Commission, 68 App. D.C. 282, 96 F.2d 554, 559 (Ct. App. D.C. 1938), certiorari denied sub nom. Gross v. Saginaw Broadcasting Co., 305 U.S. 613, 59 S.Ct. 72, 83 L.Ed. 391 (1938). As the Nemitz court pointed out:
"Findings cannot be considered adequate unless they meet certain well recognized criteria. They should be `a recitation of the basic facts established by the evidence as found by the trier of the facts, from which may be inferred the ultimate facts in terms of the statutory criterion required as a basis for a particular order' (42 Am. Jur. 500, Public Administrative Law, sec. 151); `they must be sufficiently definite and certain to enable the court to review the decision intelligently and ascertain if the facts afford a reasonable basis for the order' (Id., p. 499) and `there should be some rational or inherent relationship between the basic facts and the ultimate facts, and the latter should flow logically from the former.' (Id., p. 500; Annotation 124 A.L.R. 992-994)." (21 N.J. Super. at pages 32-33)
Clearly, the board resolutions are substantially deficient when appraised in the light of these postulates. The board sets out none of the basic facts upon which its ultimate conclusion was reached. Its resolution, as pointed out, does nothing more than summarize the testimony. Our Supreme Court has made it very clear that a summary of testimony is not a finding of fact. Cf. Delaware, L. & W.R. Co. v. City of Hoboken, 10 N.J. 418, 427 (1952). The result of the course here taken by the board is to present us with a record on the basis of which the board, without any factual or legal analysis, simply concludes that a number of statutory provisions and rules had been violated. We are without any guide to determine the ultimate facts and reasons upon which the board even purported to act.
*508 It may be observed that in summarizing the record the board included testimony which it had itself stricken. Dr. Brown had testified to a certain telephone call to the office of Dr. Weston. When counsel for the Westons objected on the ground of hearsay, the objection was sustained. Did the board rely upon this evidence to support its conclusion? We do not know. The board's summary of the record also includes opinion testimony by Dr. John G. Neill, a professor of optometry mechanics, who undertook to define "ophthalmic fitting table," "ophthalmic fitting mirror," "optical tool" and "optometric instrument." The board nowhere states that it has adopted his definitions and opinions in their totality or in part although, as indicated by appellants, it is possible by strained inference to deduce that its legal determination of guilt was based upon an acceptance and adoption of the definitions. There was at least one factual question that appears to have been disputed to some extent, and the resolutions give no clue as to which version of the facts the board adopted. We refer to the conflicting testimony as to whether the front part of the Towne Company premises was a reception room or a working area, a matter which becomes important in determining whether the Westons were guilty of maintaining a display in a reception room, in violation of N.J.S.A. 45:12-11(j), as charged. Nothing in the resolution gives us an answer to the question whether the board found as a fact that anything was displayed in a reception room.
We have here nothing more than ultimate conclusions, stated without reference to the basic facts which justify them. This alone is sufficient reason for reversing the determination of the board. New Jersey State Board of Optometrists v. Nemitz, 21 N.J. Super. 18, 33 (App. Div. 1952). In the New Jersey Bell Telephone Co. case, above, our Supreme Court (5 N.J., at page 376) cited State of Florida v. United States, 282 U.S. 194, 51 S.Ct. 119, 75 L.Ed. 291 (1931), and Atchison, T. & S.F.R. Co. v. United States, 295 U.S. 193, 55 S.Ct. 748, 79 L.Ed. 1382 (1935), with approval in holding that in the absence of basic *509 or essential findings to support an order of an administrative agency, "the evidence would not be examined in order to resolve opposing contention." The court made the following quotation from the Atchison case:
"* * * This court will not search the record to ascertain whether, by use of what there may be found, general and ambiguous statements in the report intended to serve as findings may by construction be given a meaning sufficiently definite and certain to constitute a valid basis for the order. In the absence of a finding of essential basic facts, the order cannot be sustained. State of Florida v. United States, 282 U.S. 194, 215, 51 S.Ct. 119, 75 L.Ed. 291, 305. Recently this court has repelled the suggestion that lack of express finding by an administrative agency may be supplied by implication. Panama Refining Co. v. Ryan, 293 U.S. 388, 433, 55 S.Ct. 241 [79 L.Ed.] 446, 465. See Beaumont, S.L. & W.R. Co. v. United States, 282 U.S. 74, 86, 51 S.Ct. 1, 75 L.Ed. 221, 229; Interstate Commerce Commission v. Chicago, B. & Q.R. Co., 186 U.S. 320, 341, 22 S.Ct. 824, 46 L.Ed. 1182, 1193." (295 U.S. 193, at page 201, 55 S.Ct. 748, at page 752, 79 L.Ed. 1382)

II
Despite our conclusion that the total absence of board findings should lead to a reversal of the order, we have nonetheless examined the several charges made in the light of the record.
The Optometry Act (N.J.S.A. 45:12-1 et seq.) is a penal statute which must be construed strictly. New Jersey State Board of Optometrists v. Nemitz, above, 21 N.J. Super. at page 32; Abelson's, Inc., v. New Jersey State Board of Optometrists, 5 N.J. 412, 423 (1950). Judged in the light of that standard, none of the conduct claimed to constitute violations of the statute and the board rules was clearly and convincingly supported by any evidence.
The mere fact that the Westons were employed by Towne Company, a corporation, is not sufficient to sustain the action taken by the board. A licensed optometrist may be employed by a corporation; that was settled in Jaeckle v. L. Bamberger & Co., 119 N.J. Eq. 126 (Ch. 1935), affirmed 120 N.J. Eq. 201 (E. & A. 1936). The case is still the law of this State because the language of the *510 pertinent provisions of the present statute is in all material respects identical with that in force at the time the Jaeckle case was decided. Compare L. 1948, c. 350, sec. 1 with L. 1914, c. 222, sec. 1, as amended by L. 1932, c. 75, sec. 1, and the penalty provisions of L. 1953, c. 43, sec. 63 with L. 1914, c. 222, sec. 22, as amended by L. 1932, c. 75, sec. 8. Although the present language of the penalty section (L. 1953, c. 43, sec. 63) no longer refers, as did section 22 of the original act, as it stood amended at the time of the Jaeckle decision, to employment by a "company or association" of a person not authorized to practice optometry under the act, analysis shows that language parallel to that in section 22 as amended now appears in N.J.S.A. 45:12-11(n) dealing with revocation or suspension of licenses by the board. Under subsection (n) the license of a registered optometrist may be suspended or revoked for:
"n. The continuance of an optometrist in the employ of, or acting as an assistant to any person, firm or corporation, either directly or indirectly, after he has knowledge that such person, firm, or corporation is violating the laws of New Jersey concerning the practice of optometry."
The Jaeckle case held (119 N.J. Eq., at page 127):
"* * * Section 22 imposes a penalty on an individual or a company who employs to practice optometry a person not authorized under the statute. Clearly, a company which employs for this purpose a person who is authorized to practice optometry, is not subject to the penalty. It follows, in my opinion, that the legislature did not intend to prohibit a company from employing registered optometrists to practice their profession."
This language may be paraphrased in terms of the applicability of N.J.S.A. 45:12-11(n), as follows:
"Section 11(n) imposes a penalty on an optometrist who continues in the employ of a person, firm, or corporation after he has knowledge that such person, firm or corporation is violating the laws of New Jersey concerning the practice of optometry. Clearly, an optometrist who is employed by a corporation which is not violating the laws of New Jersey concerning the practice of optometry is not subject to the penalty. It follows * * * that the legislature did not intend to prohibit a company from employing registered optometrists to practice their profession."
*511 Thus, the clear intendment of N.J.S.A. 45:12-11(n) is that an optometrist has a legal right to be employed by a corporation so long as (1) the corporation is not violating the laws of New Jersey concerning the practice of optometry, and (2) the optometrist does not have knowledge of such violation of the law by the corporation.
The 1948 Legislature which enacted N.J.S.A. 45:12-11 (L. 1948, c. 350, sec. 4) must be considered as having been well aware of the Jaeckle decision. Had it chosen to amend the statute so as to make the Jaeckle decision no longer applicable, it could have used language to make its meaning entirely clear. Cf. Furferi v. Pennsylvania R. Co., 117 N.J.L. 508, 516 (E. & A. 1937). Particularly is this so in the case of a penal statute which must be construed strictly.
The present language of the statute was before the Supreme Court in Abelson's, Inc., v. New Jersey State Board of Optometrists, 5 N.J. 412 (1950). Significantly, the court did not take the simple step there of saying that the entire issue before it was moot because a corporation could not employ an optometrist; instead, it merely held that an optometrist employed by a corporation has a right to records he made in the course of examining patients.
It may be noted that on June 21, 1954, while this appeal was pending, the Legislature approved Assembly Bill No. 386 which, among other things, would have prohibited an optometrist from
"Practicing optometry under a false or assumed name or upon a salary, commission, lease or any other basis of compensation, while directly or indirectly employed by or associated or connected with any person, association or corporation other than one who possesses a valid unrevoked certificate or registration as an optometrist or a physician licensed in and for the State of New Jersey and who has an actual legal residence within the State."
The bill was returned by the Governor to the General Assembly on August 2, 1954 with a conditional veto and is now pending before that body. The measure demonstrates that the Legislature knew how to express a legislative mandate *512 prohibiting the employment of optometrists by corporations. No such statutory provision was on the books when the complaints against the Westons were brought, the hearing held, and the resolutions adopted by the board.
We have said that to support any of the nine charges brought against the Westons, the evidence must be clear and convincing. We do not find that quality of proof in this case. The board especially stresses two of its contentions: (1) the Westons violated the statute when they permitted their ophthalmic materials and tools to be so displayed as to make them visible from the street, and (2) they violated the statute and rules of the board when they used a corporation to aid them in the practice of their profession. As to the first contention, assuming for the moment there was a display, it is clear that it was made not by the Westons but by their employer, Towne Company. N.J.S.A. 45:12-11(j) requires that the display be in "office windows or reception rooms or in display cases outside of the offices." There was certainly no display in office windows or display cases, and the testimony of the inspector that as he looked through the front window he saw fitting tables and mirrors, as well as a man fitting a woman with a pair of glasses at one of the tables while holding pliers and glasses in his hands, does not establish that there was a violation, absent proof that all this was taking place in an area clearly established as a reception room. As for the displays prohibited by N.J.S.A. 45:12-11(j), it will be observed that whatever the inspector saw was in relation to actual work being performed some distance away from the front window of the premises, as distinguished from a display for the purpose of advertising. In our view, the latter type of display is all that the Legislature intended to prohibit.
As for the contention that the Westons used a corporation to aid them in the practice of their profession, in violation of the Optometry Act and the board rules, the evidence falls far short of establishing that the Westons are in fact the company, and the company the Westons. This is certainly true of Dr. Lionel Weston. Respondent board attempts *513 to spell out the identity by showing that Dr. Albert Weston and his wife own the building where Towne Company is located; that he purchased a financial interest in the company in 1948 but released it in the fall of 1952 to his wife and brother (neither of whom is an optometrist or optician); that he signed checks on behalf of Towne Company and, finally, that he hired one Barker as an optician. These factors, in the opinion of the board, seem to have been sufficient to sustain the charge brought, but opinion is no substitute for objective, convincing proof and findings. The subjective opinion of the board is an indefinite and uncertain element, and cannot sustain the suspensions imposed. Compare the Abelson case, above, where the Supreme Court held unconstitutional the predecessor of N.J.S.A. 45:12-11(o) (L. 1948, c. 350, sec. 4, subsec. (o)) which gave the board the power to revoke or suspend a license for "Any conduct which, in the opinion of the board, is of a character likely to deceive or defraud the public." (Italics ours.)
Accordingly, the challenged resolutions are set aside.