44 N.J. Super. 7 (1957)
129 A.2d 450
IN THE MATTER OF THE SUSPENSION OR REVOCATION OF THE LICENSE OF SAMUEL PORTUGAL, O.D., TO PRACTICE OPTOMETRY IN THE STATE OF NEW JERSEY.
Superior Court of New Jersey, Appellate Division.
Argued February 11, 1957.
Decided February 18, 1957.
*9 Before Judges GOLDMANN, FREUND and CONFORD.
Mr. Maurice Jordan Price argued the cause for appellant Samuel Portugal.
*10 Mr. William K. Miller, Deputy Attorney-General, argued the cause for respondent New Jersey State Board of Optometrists (Mr. Grover C. Richman, Jr., Attorney-General of New Jersey, attorney).
The opinion of the court was delivered by GOLDMANN, S.J.A.D.
Complaint was brought against Dr. Samuel Portugal, a duly licensed optometrist of this State, for violating the provisions of N.J.S.A. 45:12-11(h) "in that he caused or permitted the insertion of an advertisement" in the March 21, 1956 issue of Diario De Noticias and the April 5, 1956 issue of Luso-Americano, Portuguese language newspapers, "which contained such information as goes beyond that permitted by section 45:12-11(h) and which also exceeded the information that is permitted on a professional card as defined in section 45:12-11(h) of the Revised Statutes." After a full hearing, the State Board of Optometrists suspended Dr. Portugal from the practice of optometry for a period of one week. He appeals pursuant to R.R. 4:88-8 and N.J.S.A. 45:12-14.
Appellant stipulated that the following advertisement appeared in Portuguese (except for the first and last two lines) in the two newspapers on the dates mentioned:
 "DR. SAMUEL PORTUGAL
 OPTOMETRIST
 EXAMINATIONS OF EYES
 Official Doctor of the Portuguese Sport Club
 1182 Raymond Blvd. Newark, N.J.
 Tel. MArket 2-6758"
It is further stipulated that both newspapers circulate in New Jersey and that Dr. Portugal paid for the advertisements. The Board found that the information "Official Doctor of the Portuguese Sport Club" offended the statutory provision.
The advertisement was first inserted in the papers by Dr. Portugal in 1945, and was continued by him thereafter. He testified that on February 8, 1955  just before the *11 effective date of L. 1954, c. 227, amending N.J.S.A. 45:12-11(h) so as to prohibit advertising of the practice of optometry except for the issuance of appointment cards or professional cards to patients or the publication by an optometrist of his professional card in regularly published newspapers  he wrote Vasco S. Jardim, editor and publisher of the Luso-Americano, published in Newark, N.J., requesting that "Official Doctor of Sport Club Portuguese" be omitted from his advertisement "because of N.J. State Board Regulations." He claims that at about the same time he verbally instructed Lucindo Freitas, New Jersey representative of Diario De Noticias, printed in New Bedford, Mass., to have the offending words deleted. However, the advertisement continued to run, and Dr. Portugal continued to pay for the insertions, until after service of the complaint on May 16, 1956.
It is not disputed that Dr. Portugal was and is by designation official doctor of the Portuguese Sport Club.
Following the decision of our Supreme Court in Abelson's, Inc. v. New Jersey State Board of Optometrists, 5 N.J. 412 (1950), the Legislature, by L. 1952, c. 255, § 4, amended N.J.S.A. 45:12-11(h) to prohibit "False, fraudulent or misleading advertising of the practice of optometry or of any art, skill, knowledge, method of treatment or practice pertaining thereto," but permitted optometrists to issue appointment cards to patients when the information thereon was limited to matter pertaining to the time and place of appointment and that permitted on the professional card, "professional card" being defined in the amendment. L. 1954, c. 227, § 4 further amended N.J.S.A. 45:12-11(h), so that it now reads:
"The board shall have the power * * * to revoke or to suspend for a specified time, to be determined in the discretion of the board, any license to practice optometry in the State of New Jersey for any of the following causes:

* * * * * * * *
h. False, fraudulent or misleading advertising of the practice of optometry or of any art, skill, knowledge, method of treatment or practice pertaining thereto.
*12 Advertising of the practice of optometry * * *; provided, however, that any person licensed under the provisions of this chapter may issue appointment cards or professional cards to his patients, when the information thereon is limited to matter pertaining to the time and place of appointment and that permitted on the professional card * * *. For the purposes of this section a professional card shall contain only the name, title, profession, degrees, address, telephone number, office hours of the licensed optometrist, and words `eyes examined,' `eye examinations,' or `hours for the examination of eyes.' The foregoing is not to be construed as prohibiting the publication by an optometrist of his professional card in regularly published newspapers provided his said card and advertisement does not contain any information other than that permitted in the definition of the professional card as is found in this section."
Prior to March 1, 1955, the effective date of L. 1954, c. 227, it was held that N.J.S.A. 45:12-11(h) forbade only advertising that was "intentionally false, deceitful or delusive or calculated to lead astray or to cause error." Advertising devoid of these elements did not fall within the statutory prohibition. Abelson's, Inc. v. New Jersey State Board of Optometrists, above, 5 N.J., at pages 422-423; New Jersey State Board of Optometrists v. M.H. Harris, Inc., 14 N.J. Super. 66, 69 (App. Div. 1951); New Jersey State Board of Optometrists v. Nemitz, 21 N.J. Super. 18, 31 (App. Div. 1952). Appellant acknowledges that the 1954 amendment considerably enlarged the scope of prohibited advertising. He recognizes that the statute, as amended, encompasses all advertising of the practice of optometry, except appointment or professional cards issued to patients, display on the professional premises when the information is limited to that of the professional card, or publication of the professional card in regularly published newspapers. And he agrees that in no case may the professional card contain more than his name, title, profession, degrees, address, telephone number and office hours, and the words "eyes examined," "eye examinations" or "hours for the examination of eyes."
Notwithstanding this legislative enlargement of the prohibition against advertising, appellant claims that the words "Official Doctor of the Portuguese Sport Club" did *13 not constitute a violation of N.J.S.A. 45:12-11(h). He launches this argument by first pointing out that the Optometry Act, being penal, must be strictly construed. The Abelson and Nemitz cases, and our own opinion in Weston v. New Jersey State Board of Optometrists, 32 N.J. Super. 502, 509 (App. Div. 1954), clearly support the proposition. He then argues that the quoted language, strictly construed, did not constitute "advertising of the practice of optometry," but merely served to identify him. The argument is frivolous. The statement "Official Doctor of the Portuguese Sport Club" cannot be isolated from the remainder of the publication, at the head of which appeared "Dr. Samuel Portugal, Optometrist, Examination of Eyes." Certainly when the advertisement is viewed in its entirety, as of course it must be, it is clearly an advertising of the practice of optometry.
Appellant next claims that "Official Doctor of the Portuguese Sport Club" was nothing more than his "title" and one of his "degrees," in the sense of setting out his station in life. To accept such a contention would render the statute meaningless.
"Degree," when used in the context of the statute, does not connote "a rank or grade of social advancement; relative rank; station in life," as quoted by appellant from Webster's New International Dictionary (1950 ed., unabridged). Rather, it has the primary meaning of "a grade or rank to which scholars are admitted by a college or university in recognition of their attainments; as the degree of bachelor, master, doctor, etc.," also given in Webster's. Cf. Commonwealth v. New England College of Chiropractic, 221 Mass. 190, 108 N.E. 895 (Sup. Jud. Ct. 1915), where "degree" was similarly interpreted in a different context.
The term "title" is perhaps less susceptible of ready definition. It might be argued that "title" includes a designation such as "chief optometrist of X Eye Hospital," on the theory that this was an activity intimately associated with the profession. However, we need not decide that point. We do not believe that in the context of the statute "title" can be deemed to include the position of "official *14 doctor" to a social organization. A contrary result would, as already indicated, render the statute nugatory.
Appellant's advertisements must be considered and judged in the light of the legislative pronouncement on the subject. The declared legislative policy in New Jersey with respect to optometry is that it is a profession, N.J.S.A. 45:12-1. In affirming that principle, the Supreme Court in the Abelson case, above, said:
"Optometry is not a mere trade or craft. * * * [T]he State may adopt measures to insure technical knowledge and skill and proscribe practices and procedure that may be unexceptionable in the market place but do not comport with the standards of professional behavior commonly accepted today as essential to the practice of the healing art and its kindred pursuits relating to anatomical and physical function. * * *" (5 N.J., at pages 418-419)
and
"In the regulation of professions of the particular class, the State may ban practices and procedures tending to unseemly competition and the lowering of the standards of service which comport with the nature of the pursuit. `Professional ethics' is but the sum of professional experience as to standards of professional behavior; and the application of such codes of conduct bears a reasonable relation to the protection of the public interest. `Bait advertising,' for example may be forbidden to practitioners of the healing art and allied callings as making for rivalry that would result in imposition and unfair dealing. Semler v. Oregon State Board of Dental Examiners, 294 U.S. 608, 55 S.Ct. 570, 79 L.Ed. 1086 (1935)." (5 N.J., at pages 420-421.)
N.J.S.A. 45:12-11(h) strictly limits advertising by the optometric profession. There is nothing in the statute which permits an optometrist to advertise the names or character or status of his patients or connections. In our view it prohibits him from utilizing any affiliation like the one under consideration as a commercial advertisement. As a matter of fact, Dr. Portugal during cross-examination admitted he was aware of the seriousness of the inclusion of the offending statement in his advertisement and recognized that it violated the statute.
*15 We conclude that the use of "Official Doctor of the Portuguese Sport Club" in the advertisement fell within the prohibition of N.J.S.A. 45:12-11(h).
Appellant's second main argument is that the Board's resolution and order of suspension was not supported by the evidence. We had occasion recently in Hornauer v. Division of Alcoholic Beverage Control, 40 N.J. Super. 501, 504-506 (App. Div. 1956), to consider the quality of proof necessary to support administrative action. We there said that "The now generally accepted gauge of administrative factual finality is whether the factual findings are supported by substantial evidence." Our courts have rather uniformly declined to resolve conflicting evidence independently of the factual conclusion of the respondent agency or board. See the discussion in Hornauer, and especially the quotations from Universal Camera Corp. v. National Labor Relations Board, 340 U.S. 474, 71 S.Ct. 456, 95 L.Ed. 456 (1951), and Stason, "`Substantial Evidence' in Administrative Law," 89 U. of Pa. L. Rev. 1026 (1941).
The court, in New Jersey State Board of Optometrists v. Nemitz, above, 21 N.J. Super., at page 27 (App. Div. 1952), intimated that the substantial evidence rule should apply in connection with the Optometry Act. Although it was said in Weston v. New Jersey State Board of Optometrists, above, 32 N.J. Super., at page 509 (App. Div. 1954), that the violation of the Optometry Act there under consideration was not "clearly and convincingly" supported by the evidence, our further consideration of the rule that should apply on appellate review leads us to the firm conclusion that the "substantial evidence" principle of Hornauer is the proper rule to follow.
In arguing that the evidence does not support the charge that he "caused or permitted" the insertion of the advertisements in question, appellant claims that the testimony was otherwise, and that he in fact asked that the advertisements be discontinued when the law was changed by L. 1954, c. 227.
The advertisements, as noted earlier in this opinion, had been running in the two Portuguese language newspapers *16 since 1945. (We might note at this point that appellant neither reads or understands Portuguese.) On direct examination Dr. Portugal denied any knowledge of the continued inclusion of the offending statement after he had allegedly requested that the same be deleted  by letter to the editor and publisher of Luso-Americano and by making a verbal request of the Diario De Noticias representative. He stated that the first notice he had of the fact that the words "Official Doctor of the Portuguese Sport Club" were not deleted was when he was served with the complaint. This testimony is inconsistent with his answers on cross-examination. Asked whether he ever looked at the newspapers to see whether the offending line had been deleted he said, "I believe in the beginning [about March 1955] they did delete it * * * I didn't look at it after that"; that he knew it was a violation of the statute; that "Several times I may have looked [at the papers]"; that he looked at them for several months after requesting the deletion and the advertisement "had been deleted." When a Board member inquired whether he had brought to the hearing a copy of the paper with the objectionable portion of the advertisement deleted, he answered that he had not. Finally, he testified that "I believe it was deleted for the first two or three issues. I don't know. I mean after that I haven't looked at the papers." He further testified that he had not received a response to the letter he had written to Luso-Americano. Asked by another Board member whether he did not think the matter important enough to follow up, to determine whether the letter had been received and if the deletion was going to be made, appellant said he knew it was important but assumed the line had been deleted.
Mr. Jardim, editor and publisher of the Luso-Americano, said he did not recall receiving Dr. Portugal's letter, but had recently found it on checking the office files. He testified further, however, that because of some oversight they had not complied with appellant's request of February 8, 1955 and that, to his knowledge, the advertisement was never changed.
*17 The New Jersey representative of Diario De Noticias, Mr. Freitas, testified that Dr. Portugal had asked him to delete the objectionable line, and he had noted this request on the margin of a news item he had sent his paper in New Bedford. He said he did not remember whether the advertisement had been changed.
In its resolution the Board reviewed the testimony at some length. It found significant conflict in Dr. Portugal's testimony when he first said he had never looked at the newspapers after February 15, 1955 until served with the complaint, and then testified he had looked several times. There was also the conflict between appellant's testimony that when he looked he found that the deletion had been made, and Jardim's testimony that insofar as he knew the advertisement had never been changed until shortly before the hearing. The Board found it difficult, in the light of the entire record, to be convinced by appellant's statements. It also considered it singular that although he claimed he had seen corrected advertisements in both newspapers, he had failed to produce any copies, and this despite the fact they were readily obtainable and certainly would have constituted an important aspect of his case. In short, the Board did not believe Dr. Portugal and unanimously found him guilty as charged.
As trier of the facts the Board, of course, had the right to pass upon the credibility of the witnesses and to evaluate their testimony. We conclude that its ruling was supported by substantial evidence and that the resolution and order of suspension must be affirmed.