75 So.2d 121

### ALABAMA STATE BOARD OF OPTOMETRY et al.

v.

### BUSCH JEWELRY COMPANY et al.

6 Div. 458.

Supreme Court of Alabama.

Oct. 7, 1954.

480

W. G. Hardwick, Dothan, Richard A. Billups, Jr., Jackson, Miss., Albert Boutwell, Wm. H. Ellis, Birmingham, for appellants.

E. M. Friend, Jr., Meade Whitaker, Sirote, Permutt & Friend, Cabaniss & Johnston, Birmingham, for appellees.

GOODWYN, Justice.

Appeal from final decree permanently restraining appellants (members of the Alabama State Board of Optometry and the Alabama Optometric Association, Incorporated) from taking action against appellees (Busch Jewelry Company, Kay Jewelry Company, Louis Graze and C. H. Kuhlo) "for or on account of the action of the complainants [appellees Busch and Kay Jewelry Companies] in inserting or using the names of the duly licensed optometrists [appellees Graze and Kuhlo] in charge of the optometric departments in complainants' stores in any advertising of said departments". The decree contains the following findings:

"The Court finds the following to be the facts in this case:

"1. The Complainants, Busch Jewelry Company and Kay Jewelry Company, are corporations lawfully doing business in the State of Alabama. In the course of their business, each of the complainants operated optometric departments in their business establishments which were in charge of optometrists duly licensed under the laws of the State of Alabama, who were employed by complainants. The services rendered by these optometrists were similar in all respects to those rendered by individual independent optometrists. No evidence was adduced which, either expressly or by inference, indicates that the services rendered to the public by the optometrists employed by complainants were in any manner inferior or less competent than those rendered by independent optometrists.

"2. The Court finds as a fact that neither of the complainants has or is practicing or attempting to practice optometry, but that all optometric services were performed by said duly licensed optometrists who exercised their own independent discretion, judgment and skill without interference or control by their employers. The Court does not find that either of the complainants has attempted to operate or has operated optometric departments without having duly licensed optometrists in charge thereof. (One phase of the cross bill in this cause raised the point that the complainant, Busch Jewelry Company, has operated optometric departments in some of its stores in Alabama which were in charge of medical doctors licensed by the State Board of Medical Examiners, but that issue, being expressly withdrawn by the cross complainants, was not considered by the Court.)

"3. The complainants for many years past have advertised to the public that optometric departments were operated in their said stores, and up to the date of the issuance of the temporary injunction in this cause on the 12th day of June, 1951, the name of the said licensed optometrist in charge of each such optometric department was inserted in all such advertising in compliance with Section 210, Title 46, Code 1940. This Court recognizes that in certain instances particular ads of the Complainant Busch Jewelry Company have appeared which did not show the name of the optometrist in charge of that complainant's optometric department, but the Court finds that such omission in these instances was inadvertent, without the consent or authority of Busch Jewelry Company, and without fault on its part.

"4. The Court further finds that unless the complainants are permitted to advertise their respective optometric departments, they will suffer a diminution of business in said departments; that the right to advertise is a substantial property right; that any denial of that right will result in irreparable damage to complainants; and that the right to practice optometry is also a valuable property right and revocation of the optometry licenses of the intervenors would cause them irreparable damage.

"5. The Court finds that there is no evidence in this cause tending to show that any advertisement published by the complainants caused or would tend to

cause any injury to the public or was misleading or false, or otherwise in contravention of the laws of the State of Alabama.

"6. The Court finds that advertising of optometric departments by the persons, firms, or corporations operating same as part of their business and use of the name of the duly licensed optometrist in charge thereof in such advertising, in a manner similar to that followed by complainants, is in accordance with and not contrary to the public policy of the State as declared by the Alabama Legislature in Chapter 11 of Title 46, Code 1940.

"7. The Court finds that the Code of Ethics of the Alabama Optometric Association, Incorporated, as amended in January, 1951, declares it to be unprofessional conduct warranting the revocation of an individual's optometry license for an optometrist to permit his name to be used in advertising by any individual, firm, association or corporation; that said Code of Ethics in that respect is contrary to the grant of the right to advertise contained in Chapter 11 of Title 46, Code 1940. The Court therefore holds that the Alabama State Board of Optometry has no authority or power to revoke or threaten to revoke the license of any optometrist upon the mere ground that he has or will permit his name to be used in advertising contrary to the provisions of said Code of Ethics as amended.

"8. The Court notes that respondents and cross-complainants in the cross bill take the position that the Code of Ethics of the Alabama, Optometric Association, Incorporated, a private corporation and not a state agency, is enforceable against intervenors, with the corollary result that the license of an optometrist may be revoked by the State Board of Optometry under Section 206 of Title 46 for conduct declared by that Association to be unethical or contrary to good practice. The Court has grave doubt that the Legislature can validly delegate to the Alabama Optometric Association, Incorporated, the power to regulate through its Code of Ethics the practice of Optometry, or that the State Board of Optometry can so emasculate its responsibilities by shifting to that Association its duty and obligation under Section 206 to take disciplinary action against licensed optometrists for conduct which is unprofessional under the standards established by the legislature. However, the Court does not find it necessary to decide these or other issues tendered by the pleadings."

Code 1940, Tit. 46, §§ 206, 210 and 211, provide as follows:

"§ 206. * * * A license issued to any person may be suspended for a definite period of time, or revoked by the state board of optometry for any of the following reasons; to-wit: Conviction of any offense involving moral turpitude, in which case, the record of conviction, or a certified copy thereof certified by the clerk of the court or by the judge in whose court the conviction is had, shall be conclusive evidence of such conviction. For unprofessional conduct. 'Unprofessional conduct' shall be defined to mean any conduct of a character likely to deceive or defraud the public, lending his license by any licensed optometrist to any person, the employment of 'cappers', or 'steerers' to obtain business, 'splitting' or dividing a fee with any person or persons, the obtaining of any fee or compensation by fraud or misrepresentation, employing directly or indirectly any suspended or unlicensed optometrist to do any optometrical work, by use of any advertising, carrying the advertising of articles not connected with the profession, the employment of any drugs or medicines in his practice unless authorized to do so by the laws covering the practice of medicine of this state, *or the doing or performing of any acts in his profession declared by the Alabama optometric association to be unethical or contrary to good practice.* * * * [Emphasis supplied.]

"§ 210. * * * Nothing in this chapter shall be so construed as to prevent any person, firm, or corporation from owning or operating a store or business establishment wherein eyes are examined or glasses fitted; provided, that such store, establishment, or optometric department shall be in charge of a duly licensed optometrist, whose name must appear on and in all optometry advertising of whatsoever nature done by said person, firm or corporation.

"§ 211. * * * It shall be unlawful for any person, firm or corporation, engaged in the practice of optometry in this state, to print or cause to be printed, or circulate or cause to be circulated, or publish, by any means whatsoever, any advertisement or circular in which appears any untruthful, impossible, or improbable or misleading statement or statements, or any thing calculated or intended to mislead or deceive the public. And it shall be unlawful for any individual, firm or corporation, engaged in the sale of goods, wares or merchandise who maintains or operates, or who allows to be maintained and operated in connection with said mercantile business an optometry department; or who rents or sub-leases to any person or persons for the purpose of engaging in the practice of optometry therein, any portion of or space in said store, premises or establishment in which such person, firm or corporation is engaged in said mercantile business, to publish, or circulate, or print or cause to be printed, by any means whatsoever, any advertisement or notice of the optometry department maintained, operated, or conducted in said establishment or place of business, in which said advertisement or notice appear any untruthful, improbable, impossible, or misleading statement or statements, or anything calculated to mislead or deceive the public."

Article III of the Code of Ethics of the Alabama Optometric Association, as amended on January 23, 1951, is as follows:

"Article III. Advertising

"Section 1. Advertising shall be prohibited except for new licensees or members who change their location, when a discreet professional card may be run for a reasonable time, but not to exceed ninety days.

"Section II. Any advertising other than prescribed in Section 1. of this Article is declared by the Alabama Optometric Association to be unethical and contrary to good practice.

"Section III. The act of any Optometrist of permitting his name to be used in any advertising by any individual, firm, association or corporation, other than as prescribed in Section I. of this Article is declared by the Alabama Optometric Association to be unethical and contrary to good practice.

"Section IV. The Alabama Optometric Association declares that any Optometrist who violates any of the provisions of this Article shall be guilty of unprofessional conduct and his or her license may be suspended or revoked by the State Board of Optometry as is provided in Section 206, Title 46, Chapter 11 of the Code of Alabama of 1940."

Sections II, III, and IV were added to Article III by the 1951 amendment. Section I had been a part of the Code of Ethics for many years.

■ Our view is that the trial court was correct in its finding that amended Article III of the Code of Ethics is contrary to the grant of the right to advertise contained in Code 1940, Tit. 46, §§ 210, 211, supra, and that the decree, therefore, is due to be affirmed. We do not discuss, as being unnecessary to a decision, whether there is an unlawful delegation of legislative authority to the Alabama Optometric Association under § 206, supra; nor do we find it necessary to pass on the validity of amended Article III of the Code of Ethics, supra, except insofar as its provisions conflict with the provisions of Code 1940, Tit. 46, §§ 210, 211, supra.

484

The clear and unmistakable legislative policy embraced in §§ 210 and 211, supra, is to permit, first, the operation of an optometric department as part of a general merchandising business, provided such department is "in charge of a duly licensed optometrist", and second, the advertising of such department, provided the name of the licensed optometrist is used in the advertising. To say, then, that a licensed optometrist may not advertise is to say, in effect, that the store owner may not advertise, for the store owner is expressly prohibited from advertising without using the licensed optometrist's name. Thus, amended Article III of the Code of Ethics impinges on the store owner's right to advertise as given by the statute. This statutory right prevails. The applicable principle is very aptly stated in Abelson's, Inc., v. New Jersey State Board of Optometrists, 5 N.J. 412, 75 A.2d 867, 872, 22 A.L.R.2d 929, 938, as follows:

"The authority to make rules and regulations for the effectuation of the statutory policy is administrative and not legislative, if its exercise is confined by certain and definite standards of action, even though the regulations be given the force and effect of law. It is a corollary of this principle that the rules and regulations and administrative action cannot subvert or enlarge upon the statutory policy or the rules and regulations therein set down. Administrative implementation cannot deviate from the principle and policy of the statute."

The Alabama optometry law was originally passed in 1919. Sections 210 and 211, supra, have remained on the statute books without material change since that time. If there is to be a change in the legislative policy therein expressed, that is a matter for legislative action.

The decree appealed from is due to be, and is, affirmed.

Affirmed.

LIVINGSTON, C. J., and SIMPSON and CLAYTON, JJ., concur.