171 So.2d 241

**William B. McCRORY**

**v.**

**William C. WOOD et al., Members of Alabama State Board of Optometry, and Alabama State Board of Optometry.**

**1 Div. 191.**

Supreme Court of Alabama.

Jan. 21, 1965.

Allan R. Cameron, Mobile, and Douglas E. Bergman, Dallas, Tex., for appellant.

Lee E. Bains, Bessemer, and John Tyson, Mobile, for appellees.

SIMPSON, Justice.

Appellant filed a bill in equity praying the issuance of a temporary injunction restraining the appellees from holding a hearing to consider charges filed with appellee board against appellant until his rights are judicially determined.

The bill alleged that appellant is a licensed optometrist and is engaged in the practice of his profession in Mobile. On November 9, 1962, he was served with a copy of written charges by one R. W. L. Ross against him as filed with the Alabama State Board of Optometry, in which the said Ross averred that appellant, while licensed as an optometrist, had committed certain acts of unprofessional conduct of such a character likely to deceive or defraud the public, and, therefore, his license to practice optometry in the State of Alabama issued by the Alabama State Board of Optometry should be revoked or suspended.

The temporary injunction was granted as prayed. Subsequently appellees filed answer to the bill and appellant amended his complaint challenging the constitutionality of §§ 192 and 206 of Title 46, Code of Alabama 1940 (recompiled 1958).

After answer duly filed the cause was heard in open court and final decree ultimately entered dissolving the temporary injunction, the court holding that the provisions of Title 46, §§ 192 and 206 were constitutional and valid. From this decree appellant perfected this appeal, the temporary injunction having been reinstated pending the disposition of the case in this court.

Briefly, the issue is this: Appellant is a licensed optometrist employed by Lee Optical Company, a corporation. He is charged with unprofessional conduct in that he permitted certain advertising to be printed and circulated in the *Dothan Eagle,* a newspaper published in Dothan, Alabama. Having engaged in such practices, he has violated the rules and regulations of the Alabama Optometric Association, Incorporated, a private corporation, which provide:

"BY-LAWS

"ARTICLE II.

"MEMBERSHIP

"Section 2. The annual per capita dues of newly registered members shall be waived the first year, provided such duly registered members immediately make application following his taking and successfully passing the State Board, and provided further that such newly registered member shall conform to the Code of Ethics and Rules of Practice of the Alabama Optometric Association. * * *

"Section 6. A member who violates the Code of Ethics or the Rules of Practice may be suspended or expelled by a majority vote, after a hearing before the Board of Directors. * * *

"Section 9. No members of this Association shall be employed by or otherwise connected with, anyone except a licensed optometrist for the practice of optometry in this state. The Board of Directors shall make the necessary interpretation of this ruling.

"CODE OF ETHICS

"ARTICLE III.

"ADVERTISING

"Section 1. Advertising shall be prohibited except for new licensees or members who change their location, when a discreet professional card may be run for a reasonable time, but not to exceed ninety days.

"Section 2. Any advertising other than prescribed in Section 1 of this Article is declared by the Alabama Optometric Association to be unethical and contrary to good practice.

"Section 3. The act of any optometrist of permitting his name to be used

in any advertisement by an individual, firm, association, or corporation, other than as prescribed in Section 1 of this Article is declared by the Alabama Optometric Association to be unethical and contrary to good practice.

"Section 4. The Alabama Optometric Association declares that any optometrist who violates any of the provisions of this Article shall be guilty of unprofessional conduct and his or her license may be suspended or revoked by the State Board of Optometry as is provided in Section 206, Title 46 Chapter II of the Code of Alabama 1940.

"ARTICLE VI.

"RULES OF PRACTICE

"B. No member shall practice in or on premises where any material other than those necessary to render his professional services are displayed to the public.

"D. No member actively engaged in the practice of optometry shall in any manner publicize or hold forth as an optician.

"L. No member shall display any merchandise, ophthalmic material or advertising of any kind in windows or in any rooms of his office for the purpose of inducing patronage."

It is clear that certain of the rules of the Alabama Optometric Association are in direct conflict with the following statutes:

Title 46, § 210, Code: "Store where glasses are sold; how department conducted.—Nothing in this chapter shall be so construed as to prevent any person, firm, or corporation from owning or operating a store or business establishment wherein eyes are examined or glasses fitted; provided, that such store, establishment, or optometric department shall be in charge of a duly licensed optometrist, whose name must appear on and in all optometry advertising of whatsoever nature done by said person, firm or corporation."

Title 46, § 211, Code: "False or misleading statements in advertisements or stores having optometry department. —It shall be unlawful for any person, firm or corporation, engaged in the practice of optometry in this state, to print or cause to be printed, or circulate or cause to be circulated, or publish, by any means whatsoever, any advertisement or circular in which appears any untruthful, impossible, or improbable or misleading statement or statements, or any thing calculated or intended to mislead or deceive the public. And it shall be unlawful for any individual, firm or corporation, engaged in the sale of goods, wares or merchandise who maintains or operates, or who allows to be maintained and operated in connection with said mercantile business an optometry department; or who rents or subleases to any person or persons for the purpose of engaging in the practice of optometry therein, any portion of or space in said store, premises or establishment in which such person, firm or corporation is engaged in said mercantile business, to publish, or circulate, or print or cause to be printed, by any means whatsoever, any advertisement or notice of the optometry department maintained, operated, or conducted in said establishment or place of business, in which said advertisement or notice appear any untruthful, improbable, impossible, or misleading statement or statements, or anything calculated to mislead or deceive the public."

The charge against appellant here is that he committed acts of unprofessional conduct in that he permitted advertisements to be printed in the *Dothan Eagle* on certain days stating that "Lee Optical is open 9:00 A.M. to 5:30 P.M. Monday— Saturday for glasses and examinations, Dr. Wm. B. McCrory, O. D.", when in fact appellant was not present to examine eyes

on the dates involved and that such acts constituted conduct likely to deceive the public. The further charge is made that appellant's license should be revoked because he lent his license to one William J. Craig who practiced optometry during the days in question at Lee Optical Company in Dothan, all in violation of the foregoing statutes, and § 206, Title 46, quoted below.

This Court has previously held that Article III of the Code of Ethics of the Alabama Optometric Association is contrary to the grant of the right to advertise contained in Title 46, §§ 210 and 211, quoted above. Alabama State Board of Optometry v. Busch Jewelry Co., 261 Ala. 479, 75 So.2d 121. The statutory right must prevail.

Appellant now raises the question of the constitutionality of §§ 192 and 206 of Title 46, Code, which was not decided in the Busch case, supra. The sections provide:

§ 192: "State board of optometry; how constituted.—The governor shall appoint a state board of optometry consisting of five persons each of whom shall be a citizen of the United States, over the age of twenty-five years, *a member in good standing of the Alabama optometric association, incorporated, or its legal successor,* and shall have been engaged in the actual continuous practice of optometry in the State of Alabama for at least five years next preceding his appointment. One member of said board shall be appointed each year for the term of five years and shall hold office until his successor is appointed and qualified. The governor may remove from office at any time any member of the board for neglect of duty, incompetency, improper or unprofessional conduct, or when the license or certificate of any member has been suspended or revoked. * * *" (Emphasis ours)

§ 206: "* * * A license issued to any person may be suspended for a definite period of time, or revoked by the state board of optometry for any of the following reasons; to-wit: Conviction of any offense involving moral turpitude, in which case, the record of conviction, or a certified copy thereof certified by the clerk of the court or by the judge in whose court the conviction is had, shall be conclusive evidence of such conviction. For unprofessional conduct. 'Unprofessional conduct' shall be defined to mean any conduct of a character likely to deceive or defraud the public, lending his license by any licensed optometrist to any person, the employment of 'cappers', or 'steerers' to obtain business, 'splitting' or dividing a fee with any person or persons, the obtaining of any fee or compensation by fraud or misrepresentation, employing directly or indirectly any suspended or unlicensed optometrist to do any optometrical work, by use of any advertising, carrying the advertising of articles not connected with the profession, the employment of any drugs or medicines in his practice unless authorized to do so by the laws covering the practice of medicine of this state, *or the doing or performing of any acts in his profession declared by the Alabama Optometric Association to be unethical or contrary to good practice.*" (Emphasis ours)

It is the position of appellant that § 192 must be declared unconstitutional because of the requirement that appointees to the State Board of Optometry must be "a member in good standing of the Alabama optometric association, incorporated, or its legal successor * * *." He insists that the quoted qualification constitutes an unlawful discrimination and deprivation of privileges, immunities and property rights of all licensed optometrists in the state who are not members of the

Alabama Optometric Association, Incorporated. It is obvious that any optometrist who works for a corporation and allows his name to be used in advertisements as does appellant would not qualify for membership in the Alabama Optometric Association and therefore would not have the qualifications to serve on the State Board of Optometry under the provisions of this section, even though such employments and acts are specifically authorized by the legislature by §§ 210 and 211, supra.

 The constitutionality of § 206 is questioned on the ground that it provides an unlawful delegation of authority by the legislature to the Alabama Optometric Association, Incorporated of the right to decide what shall constitute grounds for cancellation or suspension of an optometrist's license.

 These questions are not without difficulty. Initially, we must consider the well established presumption that every statute passed by the legislature is constitutional. It is our duty to uphold the validity of the statute assailed where possible. As the Court of Appeals of Louisiana noted in a somewhat analagous case:

"Pursuant to this well established principle every consideration of public welfare and public policy upon which the Legislature could reasonably have based such legislation should be considered, and, if the statute in question is not clearly arbitrary, unreasonable or without adequate basis, it should be upheld as constitutional."—Michell v. Louisiana State Board of Optometry Examiners, 146 So.2d 863, approved 245 La. 1, 156 So.2d 457.

The question seems to be whether there is a substantial and rational relation between the organization entrusted with the power of nomination or appointment and the function of government which the persons appointed are to perform. If so, then the statutes are generally held to be valid. A general statement on this subject appears at 12 Am.Jur. 231, § 534:

"Constitutional attacks have been occasionally made on statutes providing for the establishment of official boards and commissions appointed by private associations and organizations. The argument has been made that such laws amount to the granting of special privileges and to a denial of the equal protection of the laws. The trend of judicial authority is to sustain such legislation. For example, the courts have sustained statutes establishing boards of medical examiners to be composed of members appointed by the several medical associations within the state and even permitting one society to name more members than others were permitted to name, and also a statute providing for a municipal plans commission, the members of which were to be appointed by various enumerated organizations."

Further, at 16A C.J.S. Constitutional Law § 460, p. 179:

"Statutes have been sustained which have given the right to associations or societies of persons belonging to a particular profession to appoint the members of the state board of examiners for the profession, and the same is true of a statute providing that members of the bar shall nominate persons from whom the court shall select jury commissioners, or that jury commissioners in certain counties shall be appointed by judges of the superior courts, a statute authorizing the president of the county board to appoint the civil service commission, and a statute authorizing the nomination of members of a municipal plans commission by various associations, clubs, and corporations of a public character; * * *."

 The cases are not all in accord and none deals with the precise problem presented in the case before us. It must be admitted that the legislature may, under the exercise of its police power for the protection of the public health and welfare,

regulate the practice of optometry. We are unable to say that there is no substantial relation between the professional association and the duties which the State Board of Optometry performs. The fact that our judgment might differ from that expressed by the legislature is not controlling. In light of the rule which requires us to uphold the validity of the statute if we are able to do so, we do so in this case, with the following comment:

■ In connection with Title 46, § 206, we disapprove of the language "or the doing or performing of any acts in his profession declared by the Alabama Optometric Association to be unethical or contrary to good practice". The State Board of Optometry may not adopt nor enforce any rules or regulations which are inconsistent with the express provisions of a statute. We have expressly stated in Busch, supra, that insofar as the Code of Ethics of the Alabama Optometric Association are in conflict with the policy of the legislature as expressed in the statutes quoted in this opinion, the rules must fail—and this is particularly to be noted when the State Board considers a complaint brought before it charging "unprofessional conduct". We will not allow one to be penalized for performing acts expressly permitted by statute. It might be well in this connection to re-state the principle enunciated in Abelson's, Inc. v. New Jersey State Board of Optometrists, 5 N.J. 412, 75 A.2d 867, 22 A.L.R.2d 929, 928, quoted in the Busch case:

> " 'The authority to make rules and regulations for the effectuation of the statutory policy is administrative and not legislative, if its exercise is confined by certain and definite standards of action, even though the regulations be given the force and effect of law. It is a corollary of this principle that the rules and regulations and administrative action cannot subvert or enlarge upon the statutory policy or the rules and regulations therein set down. Administrative im-

plementation cannot deviate from the principle and policy of the statute.' "

The decree appealed from impresses us as sound and consonant with the decisions on the question.

Affirmed.

LIVINGSTON, C. J., and MERRILL and HARWOOD, JJ., concur.