L. M. BERRYHILL et al., Plaintiffs,

v.

Thomas S. GIBSON et al., Defendants.

Civ. A. No. 3339-N.

United States District Court,
M. D. Alabama, N. D.

Sept. 3, 1971.

Harry Cole, Hill, Hill, Stovall, Carter & Franco, Montgomery, Ala., for plaintiffs.

Richard A. Billups, Jr., Jackson, Miss., and by Alton Turner, Luverne, Ala., for defendants.

Before RIVES, Circuit Judge, and JOHNSON and VARNER, District Judges.

## OPINION

VARNER, District Judge:

Plaintiffs in the above cause are licensed optometrists under the state law, Code of Alabama, Title 46, § 190 et seq. In October, 1965, each of the Plaintiffs was employed by Lee Optical Company or was working on the premises of said corporation in fitting glasses and doing related optometry work in association with the sale by Lee Optical Company, of glasses to the public. In October, 1965, Plaintiffs were charged by the President of the Alabama Optometric Association with having violated several sections of the Alabama optometry law in a proceeding to be decided by the State Board of Optometry, with the result of suspending or not suspending the licenses of each of the Plaintiffs. The matter of license suspension has been pending since 1965 but has not been actively prosecuted until Plaintiffs were notified in the spring of 1971 by the Board that the matters pending against them would be heard the latter part of May, 1971.

Plaintiffs filed this proceeding requesting a three-judge court to determine the constitutionality of the statute pursuant to which the Alabama Optometric Association seeks suspension of the licenses of the Plaintiffs. Plaintiffs seek an injunction against prosecution of said state proceedings. To this end, a three-judge court has been empaneled. By Cross-Claim, Defendants seek to have this Court revoke Plaintiffs' licenses to practice optometry. By agreement, the administrative prosecution has been suspended pending this proceeding.

Plaintiffs insist that suspension of their licenses would deprive them of the right to seek remuneration from practicing their profession and, therefore, deprive them of their property without due process of law. More specifically, they say the following:

1. That since the individual members of the State Board of Optometry are substantially the same individuals who signed affidavits in 1965 stating, or supporting proceedings charging, that the Defendants (Plaintiffs here) had committed the violations charged in the proceedings, conviction of the offenses charged and suspension of licenses are but predetermined formalities with no element of a fair trial;

2. That the statutes under which Plaintiffs are being prosecuted, as they pertain to the Plaintiffs' rights to appeal from any adverse decision, are unconstitutional, particularly, in providing no method of superseding the suspension of licenses in question pending court review; and

3. That the State Board of Optometry is illegally constituted in that only about one-half of the practicing optometrists of the state may participate in the government of their profession.

■ The initial question in this case is whether this is such a situation as will require or permit federal intervention to restrain actions of a state court or administrative body. The Supreme Court in several recent cases has indicated federal reluctance to intervene, even to secure federal constitutional rights, in state judicial or administrative proceedings unless particular harassment or irreparable injury will result from the state proceeding. The Court in Younger v. Harris, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971), held that there is no irreparable injury if the threat to the plaintiff's federally-protected rights can be eliminated by defense of a single criminal prosecution, that "our federalism" ordinarily precludes an injunction against pending state criminal proceedings, and that the federal courts ordinarily should not intervene by injunction even to protect federally-protected rights without any showing of bad faith, harassment, or any other unusual circumstances that would call for equitable relief, 91 S.Ct. at 755. While dicta in *Younger* may indicate that the rule of that case does not apply in civil cases, no distinction is made between civil and criminal cases by Congress in the anti-injunction act, 28 U.S.C. § 2283. However, it has been held that this statute is not applicable to state administrative proceedings, Engelman v. Cahn, 2 Cir., 425 F.2d 954. The case of Samuels v. Mackell, 401 U.S. 66, 91 S.Ct. 764, 27 L.Ed.2d 688 (1971), indicated that "the same equitable principles relevant to the propriety of an injunction must be taken into consideration by federal district courts in determining whether to issue a declaratory judgment, and * * * where an injunction would be impermissible under these principles, declaratory relief should ordinarily be denied as well." 91 S.Ct. at 768. In the case of Dyson v. Stein, 401 U.S. 200, 91 S.Ct. 769, 27 L.Ed.2d 781 (1971), a district court's injunctive relief to a person charged under the Texas obscenity statute, on the basis of the district court's conclusion that the statute was unconstitutional, was reversed and remanded since injunctive relief was proper only where irreparable injury was threatened and there was no irreparable injury found by the district court. In Perez v. Ledesma, 401 U.S. 82, 91 S.Ct. 674, 27 L.Ed.2d 701 (1971), the Supreme Court held it was improper to interfere with enforcement of a Louisiana obscenity statute by suppressing evidence held to have been improperly seized, since the plaintiff could present his challenge to the seizure in the state prosecution. In Byrne v. Karalexis, 401 U.S. 216, 91 S.Ct. 777, 27 L.Ed.2d 792 (1971), the Supreme Court reversed a Massachusetts District Court enjoining enforcement of the state statute at the instance of the defendant who was under state court indictment for vi-

olation of the statute and remanded the case in the light of *Younger* and *Samuels* since there had been no finding that the threat to the plaintiff's constitutional rights was one that could not be eliminated by his defense against a single criminal prosecution. On the other hand, federal courts will enjoin state proceedings, even in criminal cases, to protect federal rights where irreparable injury is threatened or to prevent continued harassment, Ex parte Young, 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714; Dombrowski v. Pfister, 380 U.S. 479, 85 S.Ct. 1116, 14 L.Ed.2d 22.

Pleadings and uncontradicted evidence in the instant case indicate that Plaintiffs have been actively practicing their professions since prior to 1965 and that the cases against them have been pending since that time, that the individuals who will act as judges of their cases are largely the same individuals who in 1965 supported prosecution of Plaintiffs for the very acts for which they are now being charged; that the statutes under which they are being prosecuted provide no precautions against the Board's acting as investigator, prosecutor, and judge all in the same case and provide for no supersedeas of suspension of license, pending an appeal; and that the organization charged with judging the ethics of Petitioners and with possibly suspending their licenses, is the State Board of Optometry, a board selected from the state's 100 private practitioners of optometry who must govern the state's 192 optometrists, of whom about 92 work for some other person or entity.

The Alabama Optometric Association is a corporation formed by, and whose membership is limited to, private practitioners of the profession of optometry whose services are available to the public. The State Board of Optometry is an unincorporated Board created pursuant to Code of Alabama, Title 46, § 192, and is appointed by the Governor from members in good standing of the Alabama Optometric Association. In Alabama, approximately 100 practicing optometrists are in private practice of optometry and their services are available to the public while approximately 92 optometrists are employed by other persons or other entities. By virtue of the rules of the Association, the employed optometrists may not be members of the Association, and by virtue of said Section 192, no person other than members of the Association may serve on the State Board of Optometry. It follows, therefore, that no optometrist, employed by any other person or entity, may serve on the State Board of Optometry and that, therefore, 92 of the state's 192 practicing optometrists have no right to participate in the government of their own profession.

Code of Alabama, Title 46, § 206, provides authority for suspension or revocation of the license to practice optometry within the State of Alabama by the State Board of Optometry for certain causes in addition to those causes heretofore excluded by the Supreme Court of Alabama in McCrory v. Wood, 277 Ala. 426, 171 So.2d 241.

The question of possible bias of the Board members in this case is not whether the members are actually biased but whether, in the natural course of events, there is an indication of a possible temptation to an average man sitting as a judge to try the case with bias for or against any issue presented to him. A basic element of justice in America is that the court must avoid, not only evil but, the appearance thereof. The Supreme Court of the United States in Re Murchison, 349 U.S. 133, 75 S.Ct. 623, 99 L.Ed. 942, wrote the following:

"A fair trial in a fair tribunal is a basic requirement of due process. Fairness of course requires an absence of actual bias in the trial of cases. But our system of law has always endeavored to prevent even the probability of unfairness. To this end no man can be a judge in his own case and no man is permitted to try cases where he has an interest in the outcome. That interest cannot be defined with precision. Circumstances and relationships must be considered. This

Court has said, however, that 'every procedure which would offer a possible temptation to the average man as a judge * * * not to hold the balance nice, clear, and true between the State and the accused denies the latter due process of law.' Tumey v. Ohio, 273 U.S. 510, 532, 47 S.Ct. 437, 444, 71 L.Ed. 749, 758 [50 A.L.R. 1243]. Such a stringent rule may sometimes bar trial by judges who have no actual bias and who would do their very best to weigh the scales of justice equally between contending parties. But to perform its high function in the best way 'justice must satisfy the appearance of justice.' Offutt v. United States, 348 U.S. 11, 13, [99 L.Ed. 11,] 75 S.Ct. 11, 13."

In the instant case, there is evidence that those who are to judge the matters of suspension of licenses in the state administrative body have indicated their preconceived opinion in the case and that Lee Optical, for whom Plaintiffs worked, issued over 75,000 eyeglasses in one year. Presumably, if Plaintiffs' activities are suspended, Defendants would share in this annual business. Plaintiffs argue that the suspension of licenses of the Plaintiffs is but a matter of form and that, when the same are suspended, no supersedeas being provided, the Plaintiffs will be deprived of an opportunity to practice their profession until relief can be secured from the courts of the State of Alabama.

■ ■ Supersedeas is within the power of the court without statutory authority therefor. Huett v. Nevins, 255 Ala. 37, 50 So.2d 160; Campbell v. Byers, 6 Ala.App. 292, 60 So. 737. Appeal from a judgment, when no statute requires a supersedeas bond to effect a suspension, ordinarily suspends the judgment without such a bond. Ex parte Cudd, 195 Ala. 80, 70 So. 721; Riley v. Wilkinson, 247 Ala. 579, 25 So.2d 384. Note the evolution of the law associated therewith discussed at 4 Am.Jur. 2d 839, Appeal and Error, § 365.

■ Nonetheless, this Court is of the opinion that the statute places the fate of Plaintiffs, as practicing optometrists, in the hands of persons who have apparent personal interests in the matter in controversy. This invades the very core of due process of law.

■ Revocation of the license of a professional man to practice his profession, together with the attendant publicity which would inevitably be associated therewith, would cause irreparable damage to the Plaintiffs. No method is provided under the state law to avoid this irreparable damage. There is no necessity for exhausting state administrative remedy unless that remedy would be adequate. Kelly v. Board of Education, D.C., 159 F.Supp. 272. It is, therefore, the conclusion of this Court that to require the Plaintiffs to resort to the protection offered by state law in these cases would effectively deprive them of their property, that is, their right to practice their professions, without due process of law and that irreparable injury would follow in the normal course of events. State ex rel. Miller v. Aldridge, 212 Ala. 660, 103 So. 835; Mack v. Florida State Board of Dentistry, D.C., 296 F.Supp. 1259.

■■ We turn now to the counterclaim of the Defendants. This matter was not called to the Court's attention at the pretrial hearing and no issue was formulated thereon in the pretrial order. That order limits the issues and controls the course of the action unless modified to prevent manifest injustice, Rule 16, Federal Rules of Civil Procedure. The counterclaim would be no more than a permissive counterclaim as distinguished from a compulsory counterclaim, Big Cola Corp. v. World Bottling Co., D.C., 134 F.2d 718; Weber v. Weber, D.C., 44 F.R.D. 227; Non-Ferrous Metals, Inc. v. Saramar Aluminum Co., D.C., 25 F.R.D. 102; American Samec Corp. v. Florian, D.C., 9 F.R.D. 718. We, therefore, conclude that no manifest injustice would result from failure to consider the counterclaim and that the same should be dismissed.