[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 944 
On November 30, 1971 the City of Montgomery adopted Ordinance No. 84-71, levying a business license tax on retail sales which was parallel in some respects to the State sales tax found at Title 51, Sections 786 (2)-786 (36), Alabama Code of 1940. The City also passed Resolution No. 460-71 which requested the appellant State Department of Revenue to collect the license tax. Such collection of municipal license taxes by the Department is authorized by Title 37, Section 759 (1) of the Alabama Code of 1940:
 ". . . [U]pon the request by resolution of the council or commission of such city or town and upon the filing with said department a certified copy of the ordinance levying the tax, whenever such levy parallels the state levy except for the rate of the tax, and is subject to all definitions, exceptions, exemptions, proceedings, requirements, rules, regulations, provisions, penalties, fines, punishments and deductions as are applicable to the state sales and use taxes. . . ."
The Advertiser Company, appellee here, sells its newspapers in Montgomery to independent newscarriers, who are not licensed retailers, who in turn sell them to individual readers. This course of dealing creates some inconvenience for the State in collecting the tax due. As an accommodation therefor, the Advertiser and the Department of Revenue reached an agreement in 1959 whereby the Advertiser would directly return the State tax on sales made to its carriers, rather than require the State to tax the carriers. This arrangement was, and apparently continues to be, satisfactory as regards taxes levied by the State of Alabama. However, neither Advertiser nor its carriers has ever returned any tax to the Department of Revenue pursuant to the City's Ordinance No. 84-71, and on October 4, 1972 the Department issued to Advertiser notice to make such a tax return. A hearing on the Department's preliminary assessment of $26,312.56 against the Advertiser was held and the assessment was adjusted. On February 22, 1973 the Department entered its final assessment of $8,410.17. Advertiser thereafter appealed the assessment to the Circuit Court of Montgomery County.
In its pleadings before the circuit court, Advertiser alleged that the assessment was an illegal levy on sales at wholesale, which are not within the scope of the relevant taxing ordinances. Appellee also alleged that the tax denied it due process of law and equal protection of the laws, and that the tax was a burden on interstate commerce.
On May 28, 1975 the case was submitted to the trial court on stipulations and exhibits. The Department objected to Advertiser's submission of documents relating to a 1966 adjustment of an earlier assessment against the appellee. The trial judge did not rule on this objection at the hearing.
A decree in favor of Advertiser was rendered on June 17, 1975. In its findings contained in that decree, the trial court remarked that the sole underlying question for decision was whether or not Advertiser's sales of papers to its independent carriers were "wholesale sales" within the definition of Title 51, Section 786 (2). The trial court concluded that they were, and thus that they were not subject to the tax. On this basis the trial court set aside the assessment, taxed costs to the Department of Revenue, and discharged the supersedeas bond Advertiser had filed in connection with its appeal to the circuit court. On July 14, 1975 the Department filed its notice of appeal from this decree. *Page 945 
It is clear that the trial court correctly found that the controlling question before it was whether or not the sale of papers by Advertiser to its independent carriers amounts to a sale at wholesale: the statutory taxing scheme does not allow wholesale sales to be taxed, Title 51, Section 786 (3)(a), Code of Alabama 1940. It is also clear that Title 51, Section 786 (2)(i) provides us with the definition, for tax purposes, of a wholesale sale:
 "(i) The term `wholesale sale' or `sale at wholesale' means any one of the following: a sale of tangible personal property by wholesaler to licensed retail merchants, jobbers, dealers, or other wholesalers for resale and does not include a sale by wholesalers to users or consumers, not for resale; . . ." [Emphasis added.]
The question on appeal is whether the court below properly found that the transactions between Advertiser and its newscarriers met this definition.
The answer to this question depends on the significance attached to the word "licensed" in Title 51, Section 786 (2)(i) and to the fact that none of Advertiser's carriers is licensed. The trial court found that these factors did not render Advertiser's transactions taxable. We reverse this finding.
Because this case was submitted on stipulations and briefs, appellate review consists of sitting in judgment on the evidence, McCulloch v. Roberts, 292 Ala. 451, 296 So.2d 163. The starting point for review is the language of Title 51, Section 786 (2)(i).
The sales tax applies to retail sales. It is a tax paid by the ultimate consumer, and collected and returned to the State by the retailer. The word "license" is used throughout the tax statute to indicate a status conferred on a retailer by virtue of his remittance of collected sales tax in compliance with the law. A "licensed" merchant is one who remits the tax due on his sales; an "unlicensed merchant" is one who does not.
The scope of the sales tax statute does not extend to wholesale sales. However, the statutory definition of "wholesale" covers a more restricted category of sales than the word denotes in common parlance. Whereas the ordinary meaning of wholesale includes all sales made to retailers who will resell the item, the sales tax meaning of wholesale contained in the statute is limited to those sales made to licensed
retail merchants for purposes of resale. The implication is clear: the legislature intends to collect its tax. If a wholesaler sells to a retailer who resells the goods but does not remit the tax due, then the retail sales tax becomes an obligation of the wholesaler. We see nothing infirm in the legislature establishing such a provision to prevent the possible avoidance of tax liability.
All of Advertiser's newscarriers are unlicensed; all are engaged in retail selling to individual consumers. Because the newscarriers are not returning the tax to the State, the statute imposes this duty on Advertiser. Similarly, the municipal ordinance on appeal, paralleling the State tax in this respect, imposes this tax burden on Advertiser.
Advertiser argues that its newscarriers are not "merchants" but are "dealers", and that the adjective "licensed" does not apply to dealers in Section 786 (2)(i). It is pointed out that the stipulation in the record denominates the carriers as "dealers". Though ably made, this argument does not avail Advertiser. The stipulation at one point states: "All of the news dealers are independent merchants." This statement renders the stipulation weak evidence as to the proper characterization of the newscarriers. More important is the use of language by the Alabama Supreme Court in Merriwether v. State, 252 Ala. 590, 42 So.2d 465, and Cody v. State Tax Commission, 235 Ala. 47,177 So. 146, to the effect that a dealer who sold to an ultimate consumer became liable for the sales tax as a "retailer" under predecessor sales tax statutes which incorporated wording identical to that before us now. What these cases import to us is that a seller under *Page 946 
whatever nomenclature who completes the chain of commerce by selling to the individual that consumes rather than resells is a "retail merchant" for purposes of Section 786 (2)(i). Advertiser's carriers are retail merchants. They are notlicensed retail merchants. Under the State sales tax, and the parallel provision of the Montgomery ordinance, Advertiser's sales to its carriers are taxable as retail sales.
In addition to holding the transactions between Advertiser and its carriers to be "wholesale", the trial court also found that the Department of Revenue's position was untenable because its own policy N5-013 renders minors ineligible for retail business licenses. Only sixty percent of appellee's carriers are minors; none of Advertiser's carriers are licensed. This appears to be as much a result of appellee's apathy toward licensing as of any policy of State government. The sample contract between Advertiser and carrier included in the record of this case does not indicate that licensing is a prerequisite to becoming a carrier. The record discloses not a single instance in which a carrier's application for licensing has been denied, nor even a single instance in which an application has been made. Yet forty percent of the carriers are adults eligible for licensing under the regulation. As to them, there is no standing to raise the licensing issue, Caiola v. City ofBirmingham, 288 Ala. 486, 262 So.2d 602. The regulation does require the adults to post an itinerant vendor's tax bond as a prerequisite to licensing. This is required by express provision of Title 51, Section 786 (23) of the Alabama Code. Newscarriers are clearly itinerant vendors, and the statutory provision is a valid mechanism for insuring collection of taxes due. The trial court's decree is reversed as to that portion of the tax assessment against Advertiser derived from its sales to unlicensed adult newscarriers. This much tax is due.
As to that portion of the tax attributable to minors, the existence of the Departmental regulation compels a different result.
Under the statute, and therefore the ordinance, the burden of returning this tax falls in the first instance on the carriers. Advertiser's alleged tax liability arises only as a result of the carrier's failure to obtain a "license" — i.e., failure to collect and remit the tax as required. However, the Department has taken the position that it will not issue a license, i.e., will not accept a return of the tax, from the minor carriers whose tax liability is primary. Such a stance by the Department cannot be given effect.
The power delegated to the Department is broad:
 "The department shall from time to time promulgate such rules and regulations for making returns and for ascertainment, assessment and collection of the tax imposed hereunder as it may deem necessary to enforce its provisions; . . ." Title 51, Section 786 (30), Code of Alabama 1940.
To a certain extent, Regulation No. N5-013 has the effect of permitting the Department to assess retail sales tax liability directly against Advertiser and dispense with the inconvenience of processing returns which could otherwise be submitted by the minors. This regulation simplifies the Department's collection procedure, and it follows that the Department was not outside the bounds of the above delegated authority in issuing it. Nevertheless the regulation conflicts with the legislative policy ascertainable by reference to the statute, and judicial enforcement proceedings cannot be predicated on it, AlabamaState Bd. of Optometry v. Busch Jewelry Co., 261 Ala. 479,75 So.2d 121.
The State tax statute discloses no legislative intent to exclude minors from the activity of retail selling, or to exempt them from the license tax assessed on the privilege of engaging in that activity. There may well exist regulatory statutes which prevent minors from performing tasks related to some types of retailing, but the license tax is not a vehicle for their enforcement. Neither does the minority of a taxpayer per se establish a presumption that it is so lacking in financial responsibility *Page 947 
as to render the tax uncollectible. State taxes on incomes and other privileges are regularly assessed against minors. The financial responsibility of the itinerant minor vendors, like their adult counterparts, is provided for in Title 51, Section 786 (23) by imposition of a bond for taxes which, under WigginsEstate Co. v. Jeffery, 246 Ala. 183, 19 So.2d 769, would be a binding contract for necessaries.
Regulation N5-013 is nothing more or less than the Department's unilateral decision to refuse to collect the tax from the individuals on whom the statute places it. Absent express or implied statutory directive, it is not proper for the Department to make up the lost revenue by proceeding against a party whose liability arises only because of that unilateral refusal. The regulation having no foundation in the State statute, it cannot be effective under the City ordinance which parallels it. The decree of the trial court is affirmed as to all assessments which arose from sales made by minors.
Appellee finally argues that the Department is not authorized to collect the assessment since the Montgomery ordinance does not parallel the State sales tax, as required by Title 37, Section 759 (1). The sole point complained of as being not parallel is where the City ordinance allows the merchant to absorb the tax, whereas the State tax is required to be passed on to the consumer, Title 51, Section 786 (25), Code of Alabama 1940. This difference prevents the Montgomery tax from being a "sales tax", Al Means, Inc. v. City of Montgomery, 268 Ala. 31,104 So.2d 816.
The text of Section 759 (1) disposes of this argument, for it expressly authorizes collection of "any municipal privilege license taxes levied" which are subject to the limitations of the "state sales and use taxes." The Al Means case clearly establishes that the absorption provision is what makes a municipal tax a privilege license tax. It is absurd to interpret the legislative intent as requiring the municipal tax to parallel the State sales tax to the degree that the municipal tax would no longer be the type of tax referred to in the statute: if such were the case no tax would be capable of collection under Section 759 (1) and the provision would be devoid of meaning. Absorption being a point of nonparallelism which is necessary to retrieve the statute from nonsense, we hold that it is permitted, Ott v. Moody, 283 Ala. 288,216 So.2d 177.
Having found error in parts of the decree below, we must remand this cause for further proceedings to determine what proportion of the total assessment relates to sales to adult newscarriers. The trial court's decree setting aside that portion of the assessment is reversed; the decree below is affirmed with respect to the sales to minors.
Affirmed in part; reversed in part and remanded.
WRIGHT, P.J., and HOLMES, J., concur.